**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Comcast of Southern New England, Inc. ("Comcast")** ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **Scott McAdam** ) <br> ) <br> Defendant ) | Case No.: **04-11241-RCL** <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT & ASSESSMENT OF DAMAGES** |

## I. Liability

**1. Effect of Default**

The Plaintiff filed a Complaint in this action on June 7, 2004. The Defendant was served at the last and usual place of abode, with copies of the Complaint, Summons and other pertinent documentation on June 19, 2004. Thereafter, the Defendant failed to appear in this action. On September 29, 2004, more than twenty days after service was made upon the Defendant, Default was entered against the Defendant in this action. Plaintiff has now moved for Judgment against the Defendant.

**2. Analogous Case Law**

The Plaintiff has moved forward for Default pursuant to 47 U.S.C. § 553, a provision of Title 47 that prohibits the unauthorized interception of television signals from the cable television system. The telecommunications provisions of the United States Code also contain the provision, 47 U.S.C. § 553, which prohibits the unauthorized utilization of interstate radio-originated communications. Section 605 is extremely similar to 47 U.S.C. § 553.

Both provisions essentially bar the unauthorized interception of television signals. Also, the statutory damages provisions for non-commercial defendants in § 605 and § 553 are nearly identical. The only significant difference is that § 605's minimum statutory damage is $1,000.00

Page 1

and § 553's minimum is $255.00.  Case law pertaining to § 605 is extremely analogous to §553 case law.

In fact, the Second Circuit has held that where there is an unauthorized interception of signals from a coaxial cable, and the signals intercepted from the cable include interstate radio-originated communications, both §605 and §553 are violated.  See *International Cablevision, Inc. v. Sykes* ("Sykes I"), 997 F. 2d 998, 1007 (2d Cir. 1993); *International Cablevision, Inc. v. Svkes* ("Sykes II"), 75 F.3d 123, 131 n.4 (2d Cir. 1996).  Accordingly, the Plaintiff will make citations to television piracy cases decided pursuant to 47 U.S.C. § 605 as the cases are extremely analogous to this civil action and they are, at least, persuasive authority.

Also, in some of the cases cited in this Memorandum the defendants were using black market non-addressable descrambling devices to covertly descramble all of the cable company's signals.  These descrambling devices are often referred to as "black boxes".  In the case at bar one of the Plaintiff's legitimate converter/descrambler has been covertly modified by the Defendant or his agent to create a non-addressable descrambling device, in essence a home made black box.  This descrambling device was then utilized for the unauthorized interception of the Plaintiff's signals.  Therefore these "black box cases" are analogous to this Civil Action. Additionally, the satellite television cases cited in this Memorandum wherein the defendants utilize satellite de-scrambling devices are also similarly analogous to this Civil Action.

**3.  The Plaintiff's Case without the Default**

Even without the Defendant's Default, the Plaintiff still has a strong case against the Defendant.  Possession of a television de-scrambling device is sufficient evidence from which a trier of fact could infer that the device was used to de-scramble the Plaintiffs television signals. The decision in the Florida District Court case of *Directv. v. Miller*, Case no 6:03-cv-1027-Orl-19KRS (a copy of the unpublished case is attached hereto as "Exhibit A") supports this

proposition. In the Miller case, the plaintiff, DIRECTV, had evidence that the defendant possessed a satellite television descrambling device called an "unlooper". The defendant in the *Miller* case moved for Summary Judgment against DIRECTV contending that DIRECTV lacked the necessary "direct evidence" such as eyewitness testimony or videotape of some wrongdoing. The Court rejected this argument stating:

> A reasonable jury could conclude that the defendant illegally stole DirecTV's programming. Based on their life experience, a jury could reasonably assume that people only buy electronic equipment such as televisions, computers, or (in the case of Defendant) satellite piracy unloopers when they plan to use such equipment. It would be a strange world, after all, if people regularly bought such equipment and then put it in the closet to collect dust. *Id* at 7

Moreover, Defendant's possession of a television de-scrambling device may even create *a presumption of use*. In *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), *aff'd*, 224 F.2d 430 (2d Cir. 2000), the defendants purchased cable television de-scramblers that would allow them to illegally view the plaintiff's cable television programming. *Id*. at 456. Although there was direct evidence that the defendants had purchased de-scramblers, there apparently was no so-called "direct" evidence that they had used such devices. *Id*. at 460. The court ruled that "use" of de-scrambling devices can be presumed from purchase of the device "absent evidence of non-use or any other use." *Id*. at 461. The Second Circuit affirmed the district Court's decision. The Second Circuit held: "In the pending case, the seller's computer records showed the names of the [defendants] and the devices were installed in their home. That evidence suffices to create at least a rebuttable presumption that each of them is liable." *Community Television Systems, Inc. v. Caruso*, 284 F.3d 430, 432 (2nd Cir. 2002).

**4. Well Pled Facts Deemed Proven Upon Default**

The Default already entered in this action against the Defendant is similar to a finding of liability against the Defendant. See, *Almedia v. Secretary of Health Education of Welfare*, 622 F. 2d 1044 (1st Circuit 1980). Accordingly, based upon the Default that has already entered against

the Defendant, the Plaintiff has now proven the liability of the Defendant as to the matters set forth in the Plaintiff's pleadings.

Accordingly, the Plaintiff has proven certain pertinent facts, including but not limited to the facts that:

    a.    The Plaintiff has the legal franchise to sell cable television services in the Defendant's area;

    b.    The Plaintiff distributes it's cable television services to its subscribers utilizing scrambling technology such that a subscriber will receive descrambled (clear view) signals only for those services the subscriber is authorized to receive;

    c.    On or before June 8, 2001 the Defendant or some third party covertly modified a certain Plaintiff issued converter/descrambler and thereby created an illegal, unauthorized descrambling device;

    d.    From on or before June 8, 2001 the Defendant utilized an unauthorized descrambling device to receive and/or intercept the Plaintiff's premium cable channels and pay per view events without authorization and without payment to the Plaintiff for same; and

    e.    The Defendant's unauthorized interception of signal was done knowingly and willfully.

Based upon these facts and others set forth in the Plaintiff's Pleadings, the Defendant is now liable to the Plaintiff for violations of Title 47 U.S.C. § 553(a). Specifically, the Defendant's actions violated §553(a)(1), which provides:

> **No person shall intercept or receive or assist in intercepting or receiving any communications services offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.**

## II.     Damages

**1.  Damage Provisions and Remedy Provisions in Title 47 U.S.C. § 553(c)**

Title 47 U.S.C. §553(c) provides civil damages and remedies to an aggrieved party from a Defendant who has violated the above referenced §553(a)(1).  Various subsections of § 553 (c) provide:

1. The Court may grant a final injunction to prevent further violations of §553 (a)(1) pursuant to 47 U.S.C. § 553 (c)(2)(A);

2. The Court may grant recovery of full costs including awarding reasonable attorney's fees to the aggrieved party who prevails pursuant to 47 U.S.C. 553(c)(2)(C); and

3. The Court may award actual damages or the Court may, at the Plaintiff's election, award statutory damages in a sum of not less than $250.00 or more than $10,000.00 as the court considers just, pursuant 47 U.S.C. § 553(c)(A)(ii).

**2.  The Assessment of Statutory Damages**

Although 47 U.S.C. §553(c) provides little guidance on the assessment of statutory damages, courts have used a variety of methods when assessing statutory damages including: **(1) Estimating actual damages**, See *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004) and *Cablevision v Lokshin*, 980 F. Supp. 107 (E.D.N.Y. 1997); **(2) Assessing additional damages as a form of deterrence and/or when considering the willfulness of the violation.**  See *Time

*Warner v Domsky*, No. 96 Civ. 6851, 1997 U.S. Dist. LEXIS 13505 (S.D.N.Y. Sept. 2, 1997) (a copy of the unpublished decision is attached here to as Exhibit B), *DIRECTV v Getchel* 2004 WL 1202717 (D. Conn. 2004) (a copy of the unpublished decision is attached here to as Exhibit C) and *Cablevision v Collins* 2004 WL 1490307 (S.D.N.Y. 2004) (a copy of the unpublished decision is attached here to as Exhibit D) but See *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004); **(3) Applying a statutory damage amount for each month of the estimated period of time of the unauthorized interception.** See *American Cablevision of Queens v McGinn,* 817 F. Supp 317 (E.D.N.Y. 1993) but See *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004); **(4) Assessing statutory damages by considering the totality of circumstances without specific reference to an amount of actual damages**. See *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), <u>aff'd</u>, 224 F.2d 430 (2d Cir. 2000) *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), <u>aff'd</u>, 224 F.2d 430 (2d Cir. 2000)

### A  Estimate of Actual Damages

The Plaintiff contends that an estimate of the actual damages in this case would be in the approximate range of $6,300.00 to $9,000.00.  By Affidavit the Plaintiff has asserted that:

a. A particular converter/descrambler, bearing serial number CG79ACFCS, was issued to the Defendant on September 03, 1997;

b. Converter/descrambler CG79ACFCS was returned to the Plaintiff by the Defendant on June 08, 2001;

c. Shortly after Converter/descrambler CG79ACFCS (hereinafter the "device") was returned to the Plaintiff it was tested and that test proved unequivocally that the

       device had been modified to allow for the unauthorized interception of all the Plaintiff's premium channels and pay-per-view offerings;

d.    During the 45 months that the defendant was in possession of the device he never ordered a single premium channel and never ordered a single pay-per-view event;

e.    During the 45 months that the Defendant was in possession of the device the cost of the Plaintiff's basic services varied slightly but the Defendant paid only the bare minimum monthly amount to the Plaintiff of approximately $6.66;

f.    An individual possession of a descrambling device would still need to purchase some cable television signals in order to allow signals to enter the home to thereafter be descrambled;

g.    During the 45 months that the Defendant was in possession of the device the cost of and the number of premium channels offered by the Plaintiff varied but the approximate charge for purchasing all of the premium stations offered by the Plaintiff was $80.00 per month.

h.    During the 45 months that the Defendant was in possession of the device the costs of and the number of pay-per-view offerings from the Plaintiff varied but, by way of approximation, most movies cost $1.99 or $2.99, adult movies cost $9.99 and special events, such as boxing, the cost $30.00.  The Pay-per-view movies were available on multiple channels, 24 hours a day and there was at least one special event per month.

i.    During the period of time in question there were legitimate, legal paying customers of the Plaintiff paid as much as approximately $200.00 a month for

> service which included premium channels and significant pay-per-view purchasing (especially adult pay-per-view purchasing).

In the case of *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004) this court estimated damages for the use of the modified converter/descrambler at $139.00 per month. The defendant was only paying the minimum basic fee to this same plaintiff. Due to the fact that the allegations in this case are extremely similar and cover a similar time period this $139.00 figure is also a reasonable estimate of monthly damages in this Civil Action.

The court in the *Naranjo* case found that the estimated duration of the unauthorized interception began at the time when the defendant came into possession of the subject device *and* last ordered a premium channel and concluded as of the date the device was returned to the plaintiff. In this civil action this defendant never ordered a premium channel or a pay-per-view event. Therefore this court can infer, following the *Naranjo* reasoning that the defendant used the device during the entire 45 months it was in his possession. Accordingly, a reasonable estimate of damages for this defendant would be the estimated amount of damages per month, $139.00, times the estimated duration of the unauthorized interception, (45 months) for a total of $6,225.00

The court in the *Naranjo* case had to make some reasonable inferences as to how often the defendant utilized the unlimited pay-per-view offerings available to him via the subject device when making an estimate of damages. Another reasonable method of estimating monthly damages would be to utilize the monthly figure that the high end legitimate, legal, paying customer pays Plaintiff, $200.00 per month. If legitimate, paying customers actually pay approximately $200.00 per month for television services, then it is reasonable to infer that the defendant, utilizing the subject device at no cost to him, would access at least as many signals

per month as the high end paying customer. Accordingly, another reasonable estimate of damages for this defendant would be $200.00 times the estimated duration of the unauthorized interception (45 months) for a total of $9,000.00.

### B. Assessing Additional Damages as a form of Deterrence and when considering the Willfulness of the Violation.

The court in the *Naranjo* case declined to make an additional assessment of statutory damages as a form of deterrence because while the plaintiff in the *Naranjo* case made reference to the deterrence/willfulness, the court found that it did not cite to any particular case law with reference to this issue.  In this action the plaintiff references at least three separate cases where courts have specifically added statutory damages for the purpose of deterrence.  See *Time Warner v Domsky*, No. 96 Civ. 6851, 1997 U.S. Dist. LEXIS 13505 (S.D.N.Y. Sept. 2, 1997), *DIRECTV v Getchel*  2004 WL 1202717 (D. Conn. 2004) and *Cablevision v Collins* 2004 WL 1490307 (S.D.N.Y. 2004).

The court in the *Domsky* case clearly set forth the deterrence reasoning when, after estimating the damage in a manner similar to *Naranjo* it said:

> While I find these amounts reasonably approximate the lost revenue from the use of a pirate box, it would not be sufficient deterrence if the damages payable by a violator were limited to the value of the stolen services. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid. *Id* at 18

The *Domsky* court then went on to double its estimate of damages as a form of deterrence when assessing the statutory damages.   This reasoning was recently explicitly followed in the *Collins* case where that court also doubled its estimate of damages as a form of deterrence when assessing statutory damages.

The Connecticut Federal District Court recently considered willfulness and deterrence when assessing statutory damages for the unauthorized interception of television signals in the

Page   9

case of *DIRECTV v Getchel,* 2004 WL 1202717 (D. Conn. 2004). The court in the *Getchel case* cited to the case of *Cable/Home Communications corp. v. Network Productions, Inc*., 902 F. 2d 829, 852 (11th cir. 1990) for the proposition that **"In its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed."** *Id* at 3 (emphasis in the original) The court then went on to assess statutory damages above the statutory minimum finding that the minimum would " have no deterrent effect" . *Id* at 3.

In this civil action, the Defendant has defaulted to the specific allegations that the violations were made in a willful and knowing manner. The converter/descrambler was not modified to obtain unauthorized signals by accident. Following the line of reasoning set forth in these cases, this court should double it's estimate of actual damages or, at a minimum, the court should make an assessment of damage significant enough to act as a deterrent and to take into account the willfulness of the violation.

**C. Applying a Statutory Damage Amount for Each Month of the Estimated Period of Time of the Unauthorized Interception.**

At least one court has found that the appropriate way to assess statutory damages is to assess statutory damages at the minimum statutory damage amount for each month of the unauthorized interception See *American Cablevision of Queens v McGinn,* 817 F. Supp 317 (E.D.N.Y. 1993) but See *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004). Utilizing this method would result in a statutory damage award of $11,250.00.

**D. Assessing Statutory Damages by Considering the Totality of Circumstances without Specific Reference to an Amount for Actual Damages.**

Some courts have assessed statutory damages without specifically discussing the parameters utilized when assessing the same. See *Community Television Systems, Inc. v. Caruso,*

134 F. Supp. 2d 455 (D. Conn. 2000), *aff'd*, 224 F.2d 430 (2d Cir. 2000) *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), *aff'd*, 224 F.2d 430 (2d Cir. 2000) After a trial the Connecticut District Court in the *Community Television* case assessed statutory damages at $10,000.00 per defendant for their unauthorized interception of television signals with black boxes in violation of 47 USC § 605(a). The Second Circuit court of appeals upheld the amount of statutory damages award but ruled that the husband and wife should not each be assessed separate statutory damage awards.

The trial court in the *Community Television* case did not specifically discuss the amount of actual damages and it did not mention the word "deterrence"; rather it made general discussions as to the merits of the case.  The trial court pointed out that 47 U.S.C. § 605(e)(3)(C)(i)(II) called for statutory damages "as the court considers just".  The court then went on to assess the maximum statutory damages. Saying:

> Here, the court considers the maximum in statutory damages, to be assessed against each defendant individually, to be just.  Each defendant here appears to have employed a strategy of simply making it as difficult as possible for TCI to vindicate its rights.  There was no merit to the arguments raised on behalf of the defendants at trial as to purported flaws in TCI's proof.  In substance, each defendant merely rested on his or her Fifth Amendment right not to incriminate him or herself and the fact that the plaintiff has the burden of proof.  No defendant gave any indication of having any concern about what would be "just" in this case.  Moreover, as noted above, the defendants' actions have negative implications for TCI not only in terms of lost revenues, but also in terms of the good will of its honest customers and the technical integrity of TCI's cable system.  This is in addition to the loss of tax revenues for the State of Connecticut.  While others could be equally deserving of having assessed against the maximum in statutory damages, it is difficult to imagine a case where a defendant would be more deserving of being required to pay the maximum in statutory damages than is each of these defendants.

In this Civil Action the applicable statutory damage provision, 47 U.S.C. § 553(c)(3)(A)(ii), is extremely similar. It too calls for statutory damages "as the court considers

just". Accordingly, this court could consider generally the merits of the case when assessing statutory damages. In the civil action the plaintiff, even without a default, had a very good case against the defendant. The defendants' total lack of response should not be considered anything less than, at a minimum, disrespect for this court and in these proceedings. Accordingly, this court could assess significant statutory damages based upon these general factors without reference to specific factors referenced above.

### E. Conclusion as to Statutory Damages

Based upon the statute, the arguments and where case law referenced above, statutory damages in this case could be assessed even higher than the $7,000.00 that is being sought by the plaintiff.

### III. Injunctive Relief

Based upon the Defendant's liability as determined by the default, the Plaintiff is entitled to injunctive relief against the Defendant pursuant to Title 47 U.S.C. § 553 (c)(2)(A) which provides that the Court:

> "may grant temporary and final injunctions on such terms as it may
> deem reasonable to prevent or restrain violations of subsection (a)(1)
> of this section"

The Plaintiff need not prove irreparable harm for the injunction to issue. Where express authority for issuance of statutory injunctions is provided by legislative enactment, an injunction may issue without resort to the traditional "equitable" prerequisites so long as liability has been established under the statute. See *General Instrument Corp. v. Nu-Tek Electronics & Manufacturing, Inc.*, 3F. Supp 2d 602, 607 (E.D.Pa.1998), aff'd 197F.3d 83 (3d Cir.1999). The terms of the requested injunction are reasonably drafted to thwart any future piracy activities by

the Defendant.

## IV.     Attorney's Fees

Pursuant to Title 47 U.S.C. 553(c)(2)(C), the Court should direct the recovery of full costs, including awarding reasonable attorneys fees to an aggrieved party who prevails. The First Circuit follows the "lodestar" approach when awarding attorney's fees pursuant to a Federal statutory authorization. See, *Furtado v. Bishop*, 635 F.2d 915, (1st Cir. 1980). Using the "lodestar" approach, the Court would normally multiply the number of hours worked by a reasonable hourly rate. Utilizing the "lodestar" approach, the Court would, in essence, multiply the reasonable number of hours worked by a reasonable hourly rate. Plaintiff's counsel has filed an Affidavit with this court that would justify an attorney's fees award of $643.00.

## V.     Post-judgment Interest

The Plaintiff is entitled to post-judgment interest accruing on the Judgment pursuant to 28 U.S.C. §1961. Said statute covers post-judgment interest on civil actions brought to judgment in U.S. District Courts.

## VI.     Costs

The Plaintiff is also entitled to costs incurred in this action pursuant to § 553, specifically:

|   |   |   |
|---|---|---|
| a. | Filing Fee: | $150.00 |
| b. | Sheriff's Service Fee: | $ 48.90 |

**TOTAL COSTS:**             **$198.90**

## VII.     Conclusion

Pursuant to all of the above, the Plaintiff is entitled to a default judgment as follows:

1.     $7,000.00 in statutory damages pursuant to § 553;

2.     Attorney's and paralegal's fees of $643.00.

3.     Costs of $198.90.

Page     13

4.  The issuance of a permanent injunction pursuant to Title 47 §553 utilizing the following language or language of a similar nature:

> The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in violation of provisions of Title 47;

5.  Post-judgment interest running on the judgment pursuant to 26 U.S.C. § 1961.

                                     Respectfully Submitted for the Plaintiff,
                                     Comcast of Southern New England, Inc.
                                     By Its Attorney,

11/24/04                                        /s/ John M. McLaughlin
Date                                           John M. McLaughlin
                                             **Green Miles Lipton & Fitz-Gibbon**
                                             77 Pleasant Street
                                             P.O. Box 210
                                             Northampton, MA 01061
                                             Telephone: (413) 586-0865
                                             BBO No. 556328